UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY L. HILL and DIANNE HILL,

       Plaintiffs,                                    Case No. 1:12-cv-291

v.                                                  HON. JANET T. NEFF

CRAIG WHITFORD, *et al.*,

       Defendants.
_____/

## OPINION

      Pending before the Court is Defendants' Motion for Partial Summary Judgment (Dkt 86). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, statement of undisputed material facts, and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that Defendants' motion is properly granted.

### I.  BACKGROUND

#### A.  Factual Background

      This case concerns the efforts of Defendants Craig Whitford and Jon Snyder, code compliance officers for Defendant City of Lansing, in issuing notices of violations of Lansing's Housing Code and/or "red-tagging" four rental properties at 909–913 E. Saginaw, 711 N. Pennsylvania, 919 E. Saginaw, and 923 E. Saginaw, which at that time were owned by Plaintiffs Henry and Dianne Hill, husband and wife. The allegations arise from a March 26, 2009 complaint

that Code Compliance Officer Whitford received regarding Plaintiffs' property at 909–913 E. Saginaw (Statement of Material Facts [SMF][1] ¶¶ 1, 35). The structure at 909–913 E. Saginaw has three commercial units at the ground level and three residential units upstairs, with a common stairwell to the residential units (*id.* ¶ 6). Plaintiff Henry Hill (hereinafter "Hill") admits that he received a call from Whitford on the morning of March 26, 2009 and that Whitford indicated he needed to gain access to the property because of a report of a sewer back up (*id.* ¶ 38). Hill admits that it was important for Whitford to access the property (*id.*). Hill admits that he was aware on March 26, 2009 that there was water in the basement of 909–913 E. Saginaw (*id.* ¶ 34).

Hill claimed that he could not meet Whitford at the property on March 26, 2009 because of a meeting (*id.* ¶ 39). Whitford and Hill agreed to instead meet at the property on the following morning, March 27, 2009 (*id.* ¶ 3). Notwithstanding his claim of a scheduling conflict, Hill went to the property of 909–913 E. Saginaw on the morning of March 26, 2009 and was at the property when Whitford arrived with Code Enforcement Officer Snyder (*id.* ¶¶ 7, 39, 43). Plaintiffs contend that Hill "went to the property to pick up papers needed for his meeting" (*id.* ¶ 39).

Whitford had prepared "lack of certificate" placards and letters to apply to the residential unit doors at 909–913 E. Saginaw (SMF ¶ 4). Before March 26, 2009, a residential unit at 909–913 E. Saginaw was red-tagged as unsafe, and Hill had not filed an appeal with regard to the correction notice (*id.* ¶¶ 2, 42). The parties agree that it is illegal to occupy red-tagged properties (*id.* ¶ 51). Whitford's reasons for applying the placards were the outstanding correction notices on the building and Hill's arrearage for payments due for rental certification (*id.* ¶¶ 2, 5).

---

[1]Unless otherwise noted, the Court has cited to the material facts stated by Defendants (Dkt 87-1), as admitted by Plaintiffs (Dkt 91-2).

Whitford had accessed the door to the common hallway to the residential units at 909–913 E. Saginaw, which Hill admits was not locked (SMF ¶¶ 8-9, 40). When Whitford entered the hallway, he discovered that the previously red-tagged unit was illegally occupied by two adults and three children (*id.* ¶ 9). Whitford informed Hill that the occupancy of the red-tagged unit was illegal, and Whitford and Hill also discussed accessing the basement to the building (*id.* ¶ 10). Snyder has no recollection of Whitford entering a property on March 26, 2009 without the consent of the occupant, and he has never observed Whitford enter a property without either consent or a search warrant (*id.* ¶ 54).

Hill, Whitford and Snyder accessed the basement together (SMF ¶ 12, 45). Defendants contend that Whitford and Hill detected an odor of raw sewage "as they entered the basement stairway," whereas Plaintiffs contend that the smell was not detected until they "entered the basement stairway" (*id.* ¶¶ 12, 35, 37). In either event, the parties agree that the sewage present in the basement was "possibly as high as the top of the first cinder block on the wall" (*id.* ¶¶ 14, 45).

Hill, Whitford and Snyder also observed a gasoline-powered equipment and several gasoline cans on a shelf in the basement (SMF ¶¶ 13, 37, 45). Defendants opine that the items created a hazardous situation with regard to the water heaters and therefore an unsafe condition in the building (*id.* ¶ 13). Plaintiffs point out that the gasoline containers were not inspected to determine if they, in fact, contained gasoline or vapors that would cause an unsafe condition (*id.* ¶ 13). In any event, Defendants red-tagged 909–913 E. Saginaw on March 26, 2009 because of the hazardous condition created by both the sewage and the presence of gasoline powered equipment and gasoline cans (*id.* ¶ 15).

After completing the tagging of 909–913 E. Saginaw, Whitford proceeded to 919 E. Saginaw (SMF ¶ 18). Hill was not present for the inspection of the other units owned by him (*id.* ¶ 36), and Snyder does not specifically recall whether he accompanied Whitford to Hill's other properties after they completed their work at 909–913 E. Saginaw (*id.* ¶ 54). 919 E. Saginaw was previously tagged on May 21, 2007 for lack of a rental compliance certificate, and it was in that same status upon inspection on March 26, 2009 (*id.* ¶¶ 21, 29). It was determined that 919 E. Saginaw also lacked water service based upon a report from the Lansing Board of Water and Light (*id.* ¶ 19). A red tag was placed on 919 E. Saginaw for lack of required utilities under Lansing Housing Code § 1460.09(A)(4) (*id.* ¶¶ 20, 22).

Whitford proceeded to 923 E. Saginaw, where he observed a thick blanket over the opening of the door (SMF ¶ 23). Whitford testified that he was allowed to access the premises, where he observed electric space heaters; however, Plaintiffs deny that Whitford was allowed access (*id.*). In either event, on inspection of the basement, Whitford determined that the furnace did not operate (*id.*). A mechanical inspector was called to the property to tag the inoperable furnace (*id.* ¶ 24). A non-compliance ticket was subsequently issued for 923 E. Saginaw on July 28, 2009 (*id.* ¶ 28).

Whitford did not access Plaintiffs' property at 711 N. Pennsylvania on March 26, 2009 (SMF ¶ 25). When Whitford previously inspected 711 N. Pennsylvania on May 4, 2009, he determined that the property had been red-tagged since January 27, 2009 for lack of a rental certificate and for a correction safety notice of January 27, 2009 and that utilities were shut off to the property (*id.* ¶¶ 26, 50).

**B. Procedural Posture**

Nearly three years later, on March 25, 2012, Plaintiffs initiated this lawsuit against Whitford, Snyder, the City of Lansing, and MacKenzie Environmental Services, seeking money damages and equitable relief. Specifically, Plaintiffs alleged the following eleven counts with respect to the four properties:

I. 42 U.S.C. § 1983–Fourth Amendment–Unlawful Search (909 E. Saginaw)

II. 42 U.S.C. § 1983–Fourteenth Amendment–Due Process–Order to Vacate Dwelling (909 E. Saginaw)

III. 42 U.S.C. § 1983–Fourth Amendment–Unlawful Search (711 N. Pennsylvania)

IV. 42 U.S.C. § 1983–Fourteenth Amendment–Due Process–Order to Vacate Dwelling (711 N. Pennsylvania)

V. 42 U.S.C. § 1983–Fourth Amendment–Unlawful Search (919 E. Saginaw)

VI. 42 U.S.C. § 1983–Fourteenth Amendment–Due Process–Order to Vacate Dwelling (919 E. Saginaw)

VII. 42 U.S.C. § 1983–Fourth Amendment–Unlawful Search (923 E. Saginaw)

VIII. 42 U.S.C. § 1983–Fourteenth Amendment–Due Process–Order to Vacate Dwelling (923 E. Saginaw)

IX. 42 U.S.C. § 1983–Unconstitutional Municipal Policy

X. Exemplary Damages

XI. Negligence

(Compl., Dkt 1). In Counts I, III, V and VII, Plaintiffs request judgment in their favor and against only Defendant Whitford. In Counts II, IV, VI and VIII, Plaintiffs request judgment in their favor and against Defendants Whitford and the City of Lansing. In Count IX, Plaintiffs request judgment

in their favor and against only Defendant City of Lansing. Plaintiffs subsequently clarified that Count X is not a substantive claim but derivative of their other claims (Dkt 90 at 10). Plaintiffs directed Count XI against only Defendant MacKenzie Environmental Services.

The following day, Plaintiffs filed a First Amended Complaint, adding Count XII, "Concert of Action," seeking judgment in their favor and against Defendants Whitford, Snyder, and MacKenzie Environmental Services (Dkt 4).

The Court held a Scheduling Conference on May 14, 2012 (Dkt 14). Thereafter, Plaintiffs filed a Second Amended Complaint, with leave of the Court, adding American Waste, Inc. d/b/a Pollution Control Services, Inc. as a defendant named in Counts XI (Negligence) and XII (Concert of Action) (Dkts 19, 22). MacKenzie Environmental Services filed a Cross-Claim against American Waste, Inc. (Dkt 28), but the Cross-Claim was subsequently settled (Dkts 45-46). Further, the parties stipulated to an order dismissing Counts XI and XII of Plaintiffs' Second Amended Complaint and dismissing MacKenzie Environmental Services and American Waste, Inc. with prejudice from this proceeding as to any and all claims against it (Dkts 50-51).

After the close of discovery and an unsuccessful attempt to mediate their case, Defendants proposed to file a motion for partial summary judgment (Dkt 55). Following a Pre-Motion Conference and the Court's issuance of a briefing schedule, Defendants filed their "Motion for Partial Summary Judgment" (Dkt 86). In response, Plaintiffs filed a document titled "Opposition to Motion for Summary Judgment" (Dkt 88, as supplemented by Dkt 91). In response to Plaintiffs' filing, Defendants filed a document titled "Response Brief to Plaintiffs' Cross-Motion for Summary Judgment and Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment" (Dkt 89), although Defendants had not filed a "Motion for Summary Judgment" and Plaintiffs did not file

a cross-motion for summary judgment in their favor. Defendants indicated that filing a combined response/reply was necessary because Plaintiffs, had, to some extent in their response, sought "relief with regard to claims" that were not before the Court (*id.* at 6).

## II. ANALYSIS

### A. Standard of Review

A party may move for summary judgment, identifying the claim, or part of a claim, on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Discussion

To state a viable claim under 42 U.S.C. § 1983, Plaintiffs must allege (1) that they were deprived of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States; and (2) that the deprivation was caused by a person while acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). A municipal corporation is a "person"

within the meaning of § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) (en banc).

In their Second Amended Complaint, Plaintiffs allege that Defendant Whitford violated their Fourth Amendment rights arising from the various purported "unlawful searches" (Counts I, III, V & VII) and Defendants Whitford and the City of Lansing violated their Fourteenth Amendment rights arising from the issuance of the "orders to vacate" (Counts II, IV, VI & VIII). Plaintiffs also allege that the City's "policies of enforcement" violated their Fourth Amendment rights (Count IX). Defendants' motion for partial summary judgment challenges Counts I through VIII against Defendant Whitford and Count IX against the City.[2]

**1.    Count I:** *Fourth Amendment–Unlawful Search (909 E. Saginaw)*

In support of summary judgment in Defendant Whitford's favor on Count I, Defendants argue that even assuming Plaintiff Henry Hill did not provide Whitford consent to search 909 E. Saginaw, Whitford's entry into 909 E. Saginaw on March 26, 2009 did not violate the Fourth Amendment as both probable cause and exigent circumstances existed for the entry (Dkt 87 at 6-9). Defendants also argue that, at a minimum, Whitford is entitled to qualified immunity for the entry into 909 E. Saginaw on March 26, 2009 as he did not violate clearly established law (*id.* at 10-16).

Plaintiffs acknowledge that "consent is one of the recognized exceptions to the warrant requirement," but Plaintiffs claim that Henry Hill did not consent to Whitford's search of 909 E. Saginaw where "[Hill] was threatened to have the police called on him by Defendant Whitford to gain entry at 909 E. Saginaw" (Dkt 90 at 11-12). Plaintiffs delineate the factors for examining

---

[2]In their Motion for Partial Summary Judgment, Defendants did not seek summary judgment of Plaintiffs' due process claims in Counts II, IV, VI and VIII directed against Defendant City of Lansing or Plaintiffs' claim for exemplary damages in Count X.

consent and assert that "Plaintiffs have made a prima facie showing of lack of valid consent" where "Defendant Whitford's conduct at the door was intended to intimidate Plaintiff Henry Hill" and "[a]ny acquiescence that occurred at 909 E. Saginaw was simply acquiescence to the threat of involvement by the police" (*id.* at 12).

Plaintiffs also argue that Defendants' claims of exigency are not supported by the record and that there are genuine disputes on material facts that preclude summary judgment, specifically:

- The odor outside most likely came from the sewer construction nearby;
- The odor inside was not noticed until after Defendant Whitford had entered the basement;
- Defendant Whitford agreed to meet Plaintiff the following day which clearly works against any claim of emergency;
- There was no suggestion prior to the entry that the toilets were not working or that water service was interrupted;
- The residential units are on the top floor and there is a commercial floor between those units and the basement;
- The claim of flammable containers in the basement occurred after the unlawful entry;
- The claim of flammables is too weak to support exigency because they were never inspected to confirm the presence of vapors or liquids.

(Dkt 90 at 13). Plaintiffs opine that a "fair and reasonable inference" favorable to Plaintiffs "would establish that [Whitford's] real purpose was to view the basement and obtain evidence" (*id.* at 15). In reply, Defendants argue that Plaintiffs' list of "contentions, rather than facts" cannot create a genuine issue of material fact (Dkt 89 at 7).

The right at issue in Plaintiffs' Counts I, III, V and VII is the Fourth Amendment right to be free of "unreasonable searches and seizures." U.S. CONST. Amend. IV. The Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978). Therefore, unless some recognized exception to the warrant requirement applies, a warrant is required to conduct an

9

inspection, although a more "relaxed" probable cause requirement is implicated by the search involved in safety inspections, which is less of an intrusion on personal privacy and dignity than that which generally occurs in the course of criminal investigation. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 584 (6th Cir. 2005) (citing *Camara v. Mun. Court of the City & Cty. of San Francisco*, 387 U.S. 523 (1967)).

One of the specifically established exceptions to the warrant requirement is a search pursuant to consent, which must be voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see Clemente v. Vaslo*, 679 F.3d 482, 489 (6th Cir. 2012) (city employee who voluntarily allowed his supervisor and police officer to enter his home to inspect water meter failed to state a viable § 1983 claim for violation of the Fourth Amendment). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227.

Whitford testified that Henry Hill allowed access to the basement (Dkt 87-2, Whitford Dep. at 28-29). However, Plaintiffs claim that Whitford intimidated Hill with his threat to "have the police called on him by Defendant Whitford to gain entry." While the presence of subtle forms of coercion might flaw an individual's judgment, *see Clemente*, 679 F.3d at 489 (citing *United States v. Beauchamp*, 659 F.3d 560, 572 (6th Cir. 2011)), the totality of the circumstances in this case do not indicate that Hill's decision to grant Whitford access to the basement was coerced, even when considering the circumstances in the light most favorable to Plaintiffs, as required by FED. R. CIV. P. 56. Specifically, Hill admits that he knew it was important for Whitford to access the property, that he was aware of water in the basement, and that he had scheduled a meeting with Whitford at

10

the property the following day, statements and conduct that all belie any consequence to Whitford's purported statement that he could contact the police.

However, even assuming arguendo that Hill's consent was not voluntary, the Court is convinced that Defendants have also produced sufficient evidence to demonstrate that the safety violations at 909 E. Saginaw—illegal occupancy of a residential unit and raw sewage—created a situation justifying the warrantless entry. The safety violations necessitated prompt action by the code compliance officers, and the governmental interest being served by the intrusion outweighed the individual interest that would be protected if a warrant were required. *See generally United States v. Rohrig*, 98 F.3d 1506, 1516-18 (6th Cir. 1996); *see also Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 389-90 (6th Cir. 2008) (searches that occur during administrative or regulatory investigations are generally less intrusive than one that could potentially lead to criminal sanctions, and are accordingly more likely to be tolerated under the Fourth Amendment).

In sum, Defendants have shown that there is no genuine dispute as to any material fact concerning alternate justifications for Whitford's warrantless entry into 909 E. Saginaw. Plaintiffs, in turn, have failed to demonstrate the existence of any issue to be litigated at trial regarding their "unlawful search" claim. Defendant Whitford is therefore entitled to summary judgment of Count I in his favor.

**2.      Count III:** *Fourth Amendment–Unlawful Search (711 N. Pennsylvania)*

Plaintiffs allege that "Defendant Whitford's entry into Plaintiffs' building on March 26, 2009 was a violation of Plaintiffs constitutional rights under the fourth amendment to the United States Constitution" (Dkt 19, Second Amend. Compl. ¶ 76). In support of summary judgment in Defendant Whitford's favor on Count III, Defendants argue that there is "simply no evidence of a Fourth

Amendment violation" where Whitford testified he never went to 711 N. Pennsylvania on March 26, 2009 (Dkt 87 at 16-17).  In response, Plaintiffs concede that they are unable to "produce facts to dispute the claims of Defendants Whitford and Snyder as to Count[] III" (Dkt 90 at 15).  The Court determines that Defendants have discharged their initial burden under FED. R. CIV. P. 56, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991), and Defendant Whitford is entitled to summary judgment of Count III in his favor.

3. **Count V:** *Fourth Amendment–Unlawful Search (919 E. Saginaw)*

With regard to 919 E. Saginaw, Plaintiffs allege that "Defendant Whitford's entry into Plaintiffs' building on March 26, 2009 was a violation of Plaintiffs' constitutional rights under the fourth amendment to the United States Constitution" (Dkt 19, Second Amend. Compl. ¶ 106).  In support of summary judgment in Defendant Whitford's favor on Count V, Defendants argue that Plaintiffs' tenants granted Whitford entry to the property (Dkt 87 at 17-18).  In response, Plaintiffs concede that they are unable to "produce facts to dispute the claims of Defendants Whitford and Snyder as to Count[] ... V" (Dkt 90 at 15).

"Valid consent may be given by someone with an actual privacy interest in the place to be searched."  *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002).  The Court determines that Defendants have discharged their initial burden under FED. R. CIV. P. 56, *see Adickes*, 398 U.S. at 157; *Carver*, 946 F.2d at 454-55, and Defendant Whitford is entitled to summary judgment of Count V in his favor.

4. **Count VII:** *Fourth Amendment–Unlawful Search (923 E. Saginaw)*

Defendants argue that Whitford is entitled to summary judgment, or at a minimum qualified immunity, for the alleged unlawful search at 923 E. Saginaw (Dkt 87 at 17).  According to

Defendants, "the record evidence demonstrates clear and unequivocal consent based on Whitford's uncontested testimony" (*id.* at 18). Defendants emphasize that Plaintiffs do not explain why the consent they describe in paragraphs 95 and 96 of their complaint is invalid (*id.* at 17). Defendants point out that Plaintiffs make no allegation of duress or coercion (*id.*).

Relying on an affidavit from Abdullah Haji, Plaintiffs argue in response, and without elaboration, that Defendant Whitford "entered the premises at 923 E. Saginaw over [Haji's] objections" (Dkt 90 at 11).

Again, "[v]alid consent may be given by someone with an actual privacy interest in the place to be searched." *Elkins*, 300 F.3d at 647. Here, Defendant Whitford testified to the following:

> There was a gentleman going in and out of 923 and he saw that we were out there and somewhat flagged me down. He said that he had no heat. We looked at the outside of the building. He had his utilities. As we approached the front door, he had a very thick blanket over the opening of the door and he allowed us into his unit and in the living room were electric space heaters, things like that, and so he–we went down to the basement to look at the furnace and at that point I contacted the mechanical inspector, Cal Baxter, to see if he was available so he could come out and look at the furnace and see what was wrong with it.

(Dkt 87-2, Whitford Dep. at 59).

Plaintiffs' reliance on Haji's affidavit does not demonstrate the existence of any issue to be litigated at trial regarding the purported "unlawful search" claim in Count VII. The affidavit, in its entirety, provides the following:

> On March 26 2009 I lived at 923 Saginaw Lansing Mi. The City of [sic] building inspector came in to inspect my house without my permission. I did not call them anytime to come in for an inspection.

(Dkt 91-1). As Defendants point out in Reply (Dkt 89 at 3), the Affidavit does not clearly indicate that the tenant refused the actual inspection but seems to assert that the inspector arrived without prearranging the inspection. The evidence does not rise to the level of demonstrating the tenant's

consent was the product of duress or coercion, *Schneckloth*, 412 U.S. at 227, and therefore does not present disagreement sufficient to require submission to a jury. Rather, the Court determines that Defendant Whitford is also entitled to summary judgment of Plaintiffs' "unlawful search" claim in Count VII.

5. **Counts II, IV, VI & VIII:** *Fourteenth Amendment–Due Process–Orders to Vacate*

Defendants argue that Whitford is entitled to summary judgment, or at a minimum qualified immunity, for the procedural due process violations Plaintiffs allege in Counts II, IV, VI and VIII. Defendants argue that Plaintiffs' assertion that the properties could not be red-tagged and evacuated without a prior hearing is "simply legally wrong" (Dkt 87 at 18, citing *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (acknowledging that "extraordinary situations where some valid governmental interest is at stake ... justifies postponing the hearing until after the event")). Defendants opine that the claims against Whitford further fail as Plaintiffs have alleged only that Whitford was mistaken in red-tagging the properties, and such an allegation does not demonstrate a due process violation (*id.* at 19, citing *Harris v. City of Akron*, 20 F.3d 1396, 1404 (6th Cir. 1994) ("By attempting to show only that the defendants made the wrong decision, Harris in no sense attacked the constitutionality of the process by which that decision was reached.")).

In response, although Defendants is focused on Defendant Whitford's entitlement to summary judgment of Counts II, IV, VI & VIII, Plaintiffs more broadly present arguments and citations to cases and provisions of the International Property Code in support of their assertion that "there is no basis for dismissal of the Fourteenth Amendment claims because the current state of the law requires that opportunities to appeal and for hearings must be available to the public through notifications that are published on a statewide basis" (Dkt 90 at 17). As Defendants point out in

Reply (Dkt 89 at 1, 6), Plaintiffs seek relief for claims under the Fourteenth Amendment associated with the alleged right to notice of appeal procedures, claims not included in Defendants' Motion for Partial Summary Judgment (Dkt 90 at 17-24). In their response, Plaintiffs do not mention, let alone challenge, Defendants' request for summary judgment in Defendant Whitford's favor.

The Court determines that Defendants have discharged their initial burden under FED. R. CIV. P. 56. *See Adickes*, 398 U.S. at 157; *Carver*, 946 F.2d at 454-55. Defendant Whitford is entitled to summary judgment of Counts II, IV, VI & VIII in his favor.

**6.**     **Count IX:** *Unconstitutional Municipal Policy*

In Count IX, Plaintiffs allege that the City instituted a "policy of enforcement practices which fails to inform citizens of their rights to appeal," a "policy of enforcement which promotes retaliatory use of these ordinances by its enforcement officers," a "policy of enforcement which promotes the entry into privately owned dwellings under either the threat of arrest or the threat of loss of use of the premises," and a "policy of enforcement which routinely results in unlawful entry and searches of privately owned property" (Dkt 19, Second Amend. Compl. ¶¶ 157-61).

Defendants argue that the City is entitled to summary judgment of Count IX for the reason that Plaintiffs failed to properly plead their claim (Dkt 87 at 19). According to Defendants, the allegations in those paragraphs fail to plead a claim consistent with the standards for respondeat superior liability set forth by the Supreme Court in *Monell* (*id.*). Further, Defendants assert that Plaintiffs conducted no discovery of the appropriate City officials in that regard (*id.* at 20).

In response, Plaintiffs briefly argue that they "easily met" the standards of *Monell* because the "practice of discouraging appeals, failure to notify citizens of the right to appeal, and the widespread use of this red tagging process by other city departments is clearly established as

15

insufficient due process to protect interests in property rights" and "[t]he persons involved in this process and denial of process are sufficiently high in the employee hierarchy to establish that the city as an entity is aware of, implements, and promotes this practice" (Dkt 90 at 24-25).

Defendants' argument has merit.

The liability of a local government under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the government. *Holloway, supra.* The Sixth Circuit has instructed that the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)); *see also Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993).

Plaintiffs' response is merely a summary of the allegations in the Second Amended Complaint. Plaintiffs do not address, let alone refute, Defendants' assertion that Plaintiffs have conducted no discovery to establish the City's liability under § 1983. Plaintiffs have made no showing that the City had policies, or acquiesced in persistent practices of, failing to inform citizens of their rights to appeal, promoting retaliatory use of ordinances by enforcement officers, or promoting the entry into private dwellings under the threat of arrest or the threat of loss of use of the premises. Plaintiffs' reliance on the mere position of code compliance officers Whitford and Snyder in the "employee hierarchy" is insufficient to establish § 1983 liability. Section 1983 liability cannot be premised on a theory of respondeat superior. *Monell*, 436 U.S. at 691. Accordingly, summary judgment is appropriately granted to Defendant City of Lansing on Plaintiffs' Count IX.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Dkt 86) is granted.  Specifically, the Court grants summary judgment in favor of Defendant Whitford on Counts I through VIII and grants summary judgment in favor of Defendant City of Lansing on Count IX.  Remaining for resolution are Counts II, IV, VI and VIII against Defendant City of Lansing, and Count X (Exemplary Damages), to the extent that Count X is derivative of these remaining due process claims against the City.  An Order will be entered consistent with this Opinion.


DATED: October 14, 2014                    /s/ Janet T. Neff
                                           JANET T. NEFF
                                           United States District Judge